642 P.2d 1099

**STATE of New Mexico, ex rel. DEPART-MENT OF HUMAN SERVICES, Plaintiff-Appellee,**

v.

**Elias RAEL and Esmeralda Martinez, Defendants-Appellants.**

**No. 13130.**

Supreme Court of New Mexico.

March 25, 1982.

Jeff Bingaman, Atty. Gen., Robert N. Hilgendorf, Deputy Atty. Gen., Gerald L. McManus, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Fred J. Waltz, Northern New Mexico Legal Services, Inc., Taos, for defendants-appellants.

## OPINION

PAYNE, Justice.

This appeal presents a question of first impression in New Mexico: Is an indigent entitled to court-appointed counsel in a civil contempt proceeding brought to enforce an order of child support entered in a paternity suit? We do not consider whether an indigent is entitled to counsel in other stages of

paternity and support actions or where the Department of Human Services is not acting as assignee of support rights of a welfare recipient.

The Department of Human Services originally brought suit for a determination of paternity under Section 40–5–7, N.M.S.A. 1978, and for the support of a minor recipient of public assistance pursuant to Section 27–2–28, N.M.S.A.1978. A default judgment was entered against appellant Rael. Over a year later Rael failed to appear at a show cause hearing to determine whether he was in contempt of court for his alleged failure to comply with the order for support. He was arrested pursuant to a resulting bench warrant, and he appeared at a hearing on the warrant and the contempt allegation. The court continued the hearing based on its own determination that Rael did not understand the nature of the hearing and required the services of an attorney. Rael, after failing in his attempt to obtain private counsel, moved on the basis of his indigency for appointment of counsel. The court denied his motion, and we granted an interlocutory appeal.

Rael advances several constitutional grounds for reversal of the trial court's denial of his motion. He claims that he is entitled to appointed counsel pursuant to the sixth amendment to the United States Constitution and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution and of Article II, section 18 of the New Mexico Constitution. The Department argues that there is no constitutional requirement of appointed counsel in civil contempt proceedings brought to enforce a child support order.

## I.

The sixth amendment right to counsel guarantee applies only to criminal prosecutions. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Therefore, we must initially determine whether this contempt proceeding is civil or criminal.

We note that the United States Supreme Court has rejected a rule basing the sixth amendment right to counsel solely on the label given to a proceeding. *See Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *Argersinger v. Hamlin, supra.* "[T]he fact that the outcome of a proceeding may result in loss of liberty does not by itself ... mean that the Sixth Amendment's guarantee of counsel is applicable." *Middendorf v. Henry, supra,* at 35, 96 S.Ct. at 1287. Instead, the Supreme Court has looked to the nature of the proceeding, of the offense, and of the punishment to determine whether the proceeding is a "criminal prosecution" for the purposes of the sixth amendment. *Id.*

Our courts have for years looked to a number of factors, none of which is conclusive, in order to determine whether a contempt proceeding is civil or criminal. The most important of these factors is the nature and purpose of the punishment. *State v. Greenwood*, 63 N.M. 156, 315 P.2d 223 (1957). We discussed this factor in *International Min. & C. Corp. v. Local 177, U.S. & A.P.W.*, 74 N.M. 195, 198, 392 P.2d 343, 345 (1964):

> Commitments and fines for criminal contempt are imposed for the purpose of vindicating the authority of the court and are punitive in nature and intended as a deterrent to offenses against the public. Punishment for civil contempt is remedial and for the benefit of the complainant; it is coercive rather than punitive and is made contingent upon the defendants' compliance with the order of the court....

With civil contempt, remedial punishment for the benefit of the plaintiff is "measured in some degree by the pecuniary injury caused by the acts of disobedience." *Id.* The court may properly impose imprisonment in a civil contempt action to coerce the defendant into complying with the order of the court. *Jencks v. Goforth*, 57 N.M. 627, 261 P.2d 655 (1953). Other factors to which we have looked include whether the contempt proceeding is a separate and independent proceeding or a continuation of the original action, *New Jersey Zinc Co. v. Local 890 of International Un-*

*ion, etc.*, 57 N.M. 617, 261 P.2d 648 (1953); *Canavan v. Canavan*, 18 N.M. 640, 139 P. 154 (1914), whether the state or a private party is bringing the contempt action, *State v. Greenwood, supra*, whether the act with which the defendant is charged is also an indictable crime, *id.*, and whether the defendant's act was one of those acts "done in disrespect of the court, or which obstruct the due and proper administration of justice, or which tend to bring the court into disrepute in the form of public opinion." *State v. Magee Pub. Co. et al.*, 29 N.M. 455, 471, 224 P. 1028, 1029 (1924).

 Although Rael could have been criminally prosecuted for nonsupport pursuant to Sections 40–5–20 through 40–5–22, N.M. S.A.1978, the present proceeding is civil in nature. It is an enforcement action based on the paternity and support suit, and is not a proceeding separate and independent from the original suit. Although the state is bringing the action, it is merely acting as assignee of the minor's mother's claim for nonsupport, *see* 42 U.S.C. § 602(a)(26)(A) (1976); 45 C.F.R. § 232.11(a) (1980); § 27–2–28, N.M.S.A.1978, rather than exercising its police power, *see Brotzman v. Brotzman*, 91 Wis.2d 335, 283 N.W.2d 600 (Ct.App. 1979) (Foley, J., dissenting), and is therefore acting as a private party. The act for which the defendant would be held in contempt is his failure to pay support in compliance with the court order, rather than an act done in disrespect of the court, or one which obstructs justice or tends to bring the court into disrepute. Finally, the nature and purpose of the punishment are clearly civil. The order to show cause why judgment for $5,387 should not be entered against Rael reveals the remedial nature of the punishment. The amount is equal to the amount of the original judgment plus unpaid support from the time of judgment and is payable to the Department rather than to the court. Rael also holds the keys to his prison, since he can avoid the contempt by either complying with the order or showing his inability to comply due to no fault on his part. *See Wilson v. Wilson*, 45 N.M. 224, 114 P.2d 737 (1941). We therefore hold that this is a civil contempt proceeding and not a criminal prosecution implicating the right to counsel provisions of the sixth amendment.

## II.

Because Rael faces the threat of imprisonment, the due process clause of the fourteenth amendment is implicated. That provision embraces a requirement of fundamental fairness. Accordingly, we must decide whether Rael must be represented by court-appointed counsel in order to have a fundamentally fair contempt hearing.

The United States Supreme Court recently stated in *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), that an indigent's right to appointed counsel "has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation," *id.* at 25, 101 S.Ct. 2158, and that as his interest in personal liberty diminishes so does his right to appointed counsel, *id.* at 26, 101 S.Ct. at 2159. From this the Court derived an historical "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his personal liberty." *Id.* The Court then set forth the test to be applied to determine whether the due process clause of the fourteenth amendment entitles the indigent to assistance of appointed counsel: The private interests at stake, the risk that the procedures used will lead to erroneous decisions, and the government's interest must all be evaluated and their net weight balanced against that historical presumption. *Id.*

Here, the defendant's interest in his personal liberty, though an extremely important one, is not as strong as it would be if he were being criminally prosecuted or charged with criminal contempt. He will lose his liberty only if it is proven that he has the ability to comply and fails to make arrangements to do so. *See generally* McClelland & Eby, *Child Support Enforcement: The New Mexico Experience*, 9 N.M. L.Rev. 25, 38–39 (1978–79). Although the defendant's property interest is at stake,

that interest is also a limited one since it has already been adjudicated in the original paternity and support suit.

Both the defendant and the Department have an interest in the accurate determination of whether he has complied with the support order. Generally the legal and factual issues in a contempt hearing are not complex. The only issues before the court are whether the court order exists and is currently effective, whether the defendant knew of the order but failed to comply, and whether he has the ability to comply. These issues are typically straightforward and easily resolved. The existence and effectiveness of the order can be determined by reference to court records. "The facts establishing the arrearage are bookkeeping matters and rarely are subject to substantial dispute." *Sword v. Sword*, 399 Mich. 367, 249 N.W.2d 88, 93 (1976). The Department is unlikely to call any expert witnesses or rely to any great extent on its superior fact-gathering abilities in a routine enforcement proceeding. The defendant is usually capable of marshalling the financial facts, assessing the accuracy of the monetary claim against him and making some sort of presentation to the court. "Inquiry concerning [the] defendant's ability to pay, reasons for the arrearage and mitigating circumstances normally are not complicated," *id.*, and so do not require the assistance of an attorney to clarify them for the court. The presence of a court-appointed attorney would do little to enhance the accuracy of the decisionmaking in most cases and instead might inject a heightened adversarial atmosphere into an otherwise informal proceeding.

The government's interest in the proceeding is primarily a financial one. The Department must be able to enforce the support orders it obtains as economically as possible without impinging on constitutional guarantees. The expense of appointed counsel and the possible additional costs in time and money resulting from lengthened proceedings work against this interest in economy and efficiency. Thus, as both litigant and provider of the forum, the state has a strong interest in informal procedures. The state also has a strong interest in having court orders obeyed by the people within its jurisdiction.

When we balance all these factors against each other we conclude that due process does not require that appointed counsel be provided in every instance in which an indigent defendant faces civil contempt charges that might subject him to incarceration. As we have explained, the defendant's liberty and property interests are not as vulnerable in the context of the civil contempt hearing as in the criminal setting. The provision of court-appointed counsel would do little to reduce erroneous decisions here, where the legal and factual issues are not complex. These factors, when added to the state's interests, militate against a rule requiring appointment of counsel in all cases such as this one.

The historical presumption in favor of the appointment of counsel is weakened here. Because he "has the keys to his own prison," the defendant's liberty interest is not the full-blown liberty interest found in cases such as criminal cases or *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), where the defendant has no control over whether or not he remains incarcerated or committed to an institution. As the *Lassiter* Court stated, "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter v. Department of Social Services, supra,* at 26, 101 S.Ct. at 2159. We find that this weakened presumption is outweighed by the conclusion that the other three factors, when balanced, do not require that counsel always be appointed where an indigent is charged with civil contempt for nonsupport.

We therefore hold that the due process clause of the fourteenth amendment does not require the appointment of counsel in every case where an indigent faces the possibility of imprisonment if found to be in civil contempt for failure to comply with an order of support. However, we recognize that there may be cases in which the de-

fendant would be deprived of a fundamentally fair contempt hearing if assistance of counsel were not provided. As the court in *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1, 4 (1974), states,

> In some nonsupport contempt cases, which are not routine in nature, there may be issues of sufficient complexity so as to require the defendant to be assisted by counsel for a competent presentation of their merits. Questions such as whether the defendant had a reasonable opportunity to present his case in prior proceedings or whether he has available certain defenses such as res judicata or the statute of limitations could baffle and confuse persons who are inexperienced in the law, and it would be unfair to deny such persons the benefit of counsel if they were unable to retain a lawyer because of their financial condition. [Citations omitted.]

█ The trial court is the proper evaluator of the need for counsel on a case-by-case basis, considering factors such as the indigent's ability to understand the proceeding, the complexity of the legal and factual issues, and the defenses that might be presented. We hold that the trial court must make a case-by-case determination, based on articulated reasons, whether fundamental fairness requires the appointment of counsel to assist an indigent defendant in a nonsupport civil contempt proceeding, and may, in the exercise of its sound discretion, appoint counsel in the proper case.

### III.

When we examine the record before us we do not find that the trial court considered those factors we outlined above in making its decision to deny Rael's motion for appointment of counsel. We therefore vacate the trial court's denial of the motion and remand the case for further proceedings consistent with this opinion.

Because we reverse and remand this case on the basis of the due process clause of the fourteenth amendment to the United States Constitution, we need not consider Rael's other claims.

IT IS SO ORDERED.

EASLEY, C. J., and FEDERICI, J., concur.